UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BEVERLY CHESSER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 19-081-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FIFTH THIRD BANK, | ) | **MEMORANDUM OPINION** |
| NATIONAL ASSOCIATION, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Fifth Third Bank, National Association ("Fifth Third") filed a motion for summary judgment on both counts of Plaintiff Beverly Chesser's Complaint. [Record No. 21] Chesser responded to the motion [Record No. 22] and Fifth Third then filed a reply. [Record No. 23] The Court has reviewed the record and relevant law and finds summary judgment to be appropriate on Chesser's claim for violation of the Kentucky Consumer Protection Act ("KCPA"). However, a hearing on issues pertaining to Chesser's breach of contract claim is necessary to resolve the motion regarding that claim. As a result, the motion for summary judgment will be granted in part, with the Court reserving ruling on the breach of contract claim.

**I.**

Chesser owns property located at 1377 Harrodsburg Road in Perryville, Kentucky ("the Property"). [Record No. 1-1] She executed a mortgage agreement with Fifth Third on July 8, 2010, granting the bank a security interest in the Property. [Record No. 21-2, p. 1] Fifth Third now services the mortgage for the Federal Home Loan Mortgage Corporation ("Freddie Mac").

[Record Nos. 21-1, p. 3 and 21-4, p. 24] Fifth Third is bound by the servicing procedures outlined in Freddie Mac's Single-Family Seller/Servicer Guide ("the Guide"). [Record Nos. 21-1, p. 3 and 21-3]

Chesser leased the Property and decided to evict her tenants in 2016 after inspecting the premises. [Record Nos. 21-4, p. 2 and 22, p. 1] Angered by her decision, the tenants vandalized the Property, causing considerable damages. [Record No. 22, p. 2] The plaintiff began repairing the Property that same year. [Record No. 21-4, p. 2] Chesser hired a licensed plumber and mason, but unlicensed friends and family members performed most of the repairs. [*Id.* at pp. 2-14]

Chesser maintained homeowners' insurance on the property through the Kentucky Farm Bureau ("KFB") pursuant to the mortgage agreement and submitted a claim for $82,732.89. [Record Nos. 21-2 and 21-5, p. 9] Section 5 of the mortgage agreement prescribes the procedure for handling insurance proceeds stemming from damage to the Property. It provides:

> Unless [Fifth Third and Chesser] otherwise agree in writing, any insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration is economically feasible and [Fifth Third's] security is not lessened. During such repair and restoration period, [Fifth Third] shall have the right to hold such insurance proceeds until [Fifth Third] has had an opportunity to inspect such Property to ensure the work has been completed to [Fifth Third's] satisfaction, provided that such inspection shall be undertaken promptly. [Fifth Third] may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payment as work is completed.

[Record No. 21-2, pp. 7-8] After KFB issued a check for the insurance proceeds payable to Chesser and Fifth Third in late September 2018, Chesser indorsed the draft and tendered it to

the bank in compliance with Section 5 of the mortgage agreement. [Record Nos. 1-1, p. 2 and 21-2, pp. 7-8]

Fifth Third wrote to Chesser on September 28, 2018, outlining its detailed procedure for disbursing the insurance proceeds. [Record No. 21-4, pp. 24-29] This letter summarized the Guide's requirements for disbursement, informing Chesser that she needed to provide the bank with "(1) a copy of the estimate of damages from KFB; (2) completed and signed [a]cknowledgment of [t]erms; (3) the contractor's signed estimate or bid; (4) the contractor's license; (5) the contractor's W-9 tax form; and (6) a conditional waiver of lien," prior to the release of the first draw of the insurance proceeds. [Record Nos. 21-1, p. 4, 21-3, pp. 1-4, and 21-4, p. 24] Fifth Third included acknowledgement of terms and conditional waiver of lien forms with the letter. [Record No. 21-4, pp. 27-29]

Chesser began the process of obtaining the proceeds from Fifth Third in October 2018. [Record No. 21-5, p. 5] She sought Fifth Third's inspection of the repairs periodically from October 2018 through January 2019. [*See* Record No. 21-5, pp. 7-8.] The plaintiff stated in an answer to an interrogatory that an inspection was scheduled on at least one occasion but then canceled. [Record No. 21-5, pp. 7-8] Chesser also submitted receipts for the contracting work performed by the licensed contractors and unlicensed friends and family members. [Record Nos. 21-4, pp. 2-14 and 21-5, pp. 5-6] Fifth Third, however, refused to release the proceeds because Chesser did not comply with five of six requirements of the September 28, 2018 letter, namely: (1) a signed acknowledgement of terms; (2) contractors' signed estimates or bids; (3) contractors' licenses; (4) the contractors' W-9 tax forms; and (5) completed conditional waiver of lien forms. [Record No. 21-1, p. 4] Fifth Third has since released $16,048.21 of the $82,732.89 of KFB proceeds. [Record No. 21-6, p. 2]

Chesser filed this action in the Boyle Circuit Court on January 29, 2019, alleging claims for violation of the Kentucky Consumer Protection Act ("KCPA") and breach of contract (i.e., the mortgage agreement). [Record No. 1-1, pp. 1-4] Fifth Third removed the case to this Court on March 4, 2019. [Record No. 1]

## II.

"Summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law." *I.L. by and through Taylor v. Tenn. Dep't of Educ.*, 739 F. App'x 319, 321 (6th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). The moving party initially bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the movant meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing Fed. R. Civ. P. 56(e)). The Court views all evidence in the light most favorable to the nonmoving party. *McLaughlin*, 772 F. App'x at 302 (citing *Anderson*, 477 U.S. at 252).

## III.

### A.

Chesser's first claim for relief alleges that Fifth Third violated the KCPA. [Record No. 1-1, p. 3] Fifth Third contends that it is entitled to judgment as a matter of law on this count because the KCPA does not apply to real estate transactions. [Record No. 21] The Court agrees that the KCPA is inapplicable, and that claim will be dismissed.

The KCPA grants a right of action to "[a]ny person who purchases or leases *goods or services* primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of . . . a method, act or practice declared unlawful by KRS § 367.170." Kentucky Revised Statutes ("KRS") § 367.220(1) (emphasis added). Chesser argues that, for the purposes of the KCPA, the mortgage is the "'good[]' purchased by the Plaintiff." [Record No. 22, p. 6]

A mortgage is not a good. Courts have looked to the "goods" definition of Article 2 of the U.C.C., as adopted by KRS § 355.2-105, when addressing goods in the KCPA context. *Aud. v. Illinois Cent. R.R. Co.*, 955 F. Supp. 757 (W.D. Ky. 1997); *see also Craig v. Keene*, 32 S.W.3d 90, 91 (Ky. App. 2000). Goods accordingly include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." *Aud*, 955 F. Supp. at 757 (quoting KRS § 355.2-105). A mortgage is not a movable thing. It is an interest in real estate that serves as "a mere security for a debt." *Bd. of Councilmen of City of Frankfurt v. Fidelity Trust & Safety-Vault Co.*, 64 S.W. 470, 473 (Ky. 1901) (citation omitted).

Further, the KCPA "does not apply to real estate transactions by an individual homeowner." *Riley v. Wells Fargo Bank, N.A.*, No. 16-cv-157-JMH, 2017 WL 2240570, at *5 (E.D. Ky. May 22, 2017) (citing *Craig*, 32 S.W.3d at 91). Thus, when "[t]he transaction in question involves a mortgage loan for Plaintiff's home, [] the KCPA is not applicable." *Id.*

In summary, the mortgage in this case is not a good under the KCPA, and the act does not apply to real estate transactions, including mortgages.[1] Chesser's claim for violation of the KCPA will be dismissed.

**B.**

Chesser asserts a second claim: breach of contract for breach of the mortgage agreement. [Record No. 1-1, pp. 3-4] Fifth Third contends it is entitled to judgment as a matter of law regarding this claim because it complied with the mortgage agreement and the Guide's disbursement requirements, while Chesser, who is subject to both the mortgage agreement and the Guide's requirements, did not provide the necessary documentation to receive full disbursement of the proceeds. [Record No. 21-1] Chesser primarily argues that she can maintain a breach of contract claim because Fifth Third failed to promptly inspect the Property's repairs and wrongfully withheld the proceeds. [Record No. 22]

To resolve this issue, however, a hearing is necessary. *See* Fed. R. Civ. P. 56(e). The parties should prepare to address the following narrow issues related to their arguments supporting and opposing summary judgment on the breach of contract claim, producing evidence where necessary:

---

[1] The KCPA applies to services and consumer goods purchased or leased "primarily for personal, family or household purposes." KRS § 367.220(1); *see also, e.g.*, *Cohen v. North Ridge Farms, Inc.*, 712 F. Supp. 1265, 1271-72 (E.D. Ky. 1989) (holding that the plaintiff lacked standing to bring an action under KRS § 367.220 because the underlying good, a thoroughbred racehorse, was not a consumer good). This dispute concerns insurance proceeds paid to remedy disgruntled tenants' misuse of the Property. It is not entirely clear whether Chesser has used the Property primarily for business purposes since she granted Fifth Third the mortgage, but the facts of this case suggest that it is, or was, a rental property to a large extent. Thus, even if Chesser could claim that she transacted for a good or service, the KCPA would likely not apply because it appears that Chesser mortgaged property used for business purposes.

1. Whether the Property's repairs have been completed, and if so, when they were completed;

2. When, if at all, Fifth Third inspected the Property after the initial inspection requests made by Chesser prior to the filing of this action;

3. Whether specific document(s) or applicable law explicitly compel Chesser's compliance with the Guide and/or the Guide's insurance proceeds disbursement provisions; and

4. If Chesser is obligated to comply with the Guide's requirements, whether a failure to comply with them affects Fifth Third's obligation to inspect under Section 5 of the mortgage agreement.

The hearing will be limited to evidence and argument concerning these specific issues.

**IV.**

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Defendant Fifth Third Bank, National Association's motion for summary judgment [Record No. 21] is **GRANTED**, in part. The Court **RESERVES** ruling on whether the defendant is entitled to summary judgment on Plaintiff Beverly Chesser's breach of contract claim.

2. The parties shall appear for a hearing conducted in accordance with this order on **Friday, February 7, 2020**, beginning at the hour of **1:00 p.m.**, at the United States Courthouse in Lexington, Kentucky.

Dated: January 21, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky