UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BEVERLY CHESSER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 19-081-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FIFTH THIRD BANK, | ) | **MEMORANDUM OPINION** |
| NATIONAL ASSOCIATION, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Fifth Third Bank, National Association ("Fifth Third") has filed four motions *in limine* to exclude various evidence and arguments from the September 21, 2020, jury trial of this action in which Plaintiff Beverly Chesser alleges a breach of contract claim. [Record Nos. 34-37] The first is an "omnibus" motion that includes eight requests to exclude evidence or prohibit the defendant from making certain arguments and one request to sequester witnesses. [Record No. 34] Through its second motion, Fifth Third seeks to exclude evidence of its financial condition. [Record No. 35] The third motion seeks to exclude all evidence of Chesser's request for compensatory damages and attorney's fees. [Record No. 36] Finally, in its fourth motion, Fifth Third seek to exclude all evidence supporting Chesser's claim for punitive damages. [Record No. 37]

The motions have been fully briefed and are ripe for disposition. Having considered the matter, the Court will grant the motions, in part, and deny the motions, in part, while reserving rulings on certain issues.

- 1 -

## I.  Relevant Factual and Procedural Background

Chesser owns a house ("the house" or "the property") in Perryville, Kentucky.  [Record No. 1-1] She executed a mortgage agreement with Fifth Third on July 8, 2010.  [Record No. 21-2, p. 1] Sometime after the mortgage agreement was executed, Fifth Third became the servicer of the mortgage for the Federal Home Loan Mortgage Corporation ("Freddie Mac").  [Record Nos. 21-1, p. 3 and 21-4, p. 24] As the mortgage's servicer, Fifth Third must follow servicing procedures outlined in Freddie Mac's Single-Family Seller/Servicer Guide ("the Guide").  [Record Nos. 21-1, p. 3 and 21-3]

Chesser used the house as rental property, and she evicted tenants in 2016.  [Record Nos. 21-4, p. 2 and 22, p. 1] After learning of the upcoming eviction, the tenants vandalized the property.  [Record No. 22, p. 2] Chesser later hired various licensed and unlicensed contractors to repair the damage caused by the tenants.  [*Id.* at pp. 2-14]

Kentucky Farm Bureau ("KFB") insured the property, and Chesser submitted a homeowners' insurance claim for $82,732.89.  [Record Nos. 21-2 and 21-5, p. 9]  Section 5 of the mortgage agreement with Fifth Third prescribes the procedure for handling insurance proceeds that account for damage to the property.  It states:

> Unless [Fifth Third and Chesser] otherwise agree in writing, any insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration is economically feasible and [Fifth Third's] security is not lessened. During such repair and restoration period, [Fifth Third] shall have the right to hold such insurance proceeds until [Fifth Third] has had an opportunity to inspect such Property to ensure the work has been completed to [Fifth Third's] satisfaction, provided that such inspection shall be undertaken promptly. [Fifth Third] may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payment as work is completed.

[Record No. 21-2, pp. 7-8] KFB issued an $82,732.89 check for the insurance claim in late September or early October 2018, which Chesser tendered to the bank in compliance with this

provision of the mortgage agreement.  [Record Nos. 1-1, p. 2 and 21-2, pp. 7-8]  KFB withheld approximately $3,000.00 of depreciation value pending the completion of all repairs on the property.  [Record Nos. 30, p. 35 and 36-3, p. 24]

Fifth Third sent Chesser a letter dated September 28, 2018, describing the bank's detailed procedures for claiming the insurance proceeds.  [Record No. 37-3] These procedures followed those prescribed by the Guide.  [Record No. 37-2] Chesser began the process of obtaining the KFB funds from Fifth Third in October 2018, tendered KFB claim information and various receipts from repairs of the property and requested inspection of the repairs pursuant to the mortgage agreement.  [Record No. 21-5, pp. 5-8]  Fifth Third, however, did not release the insurance proceeds because it claimed that Chesser failed to comply with the procedures prescribed by the Guide, and no inspection was conducted for over a year (i.e., until November 21, 2019).  [Record No. 30, p. 4]

Chesser filed suit in Boyle Circuit Court on January 29, 2019, alleging claims for violation of the Kentucky Consumer Protection Act ("KCPA") and breach of contract (i.e., the mortgage agreement).  [Record No. 1-1, pp. 1-4]  The defendant disbursed $16,048.21 of the KFB insurance funds to Chesser on February 25, 2019.  [Record No. 37, p. 7]  Fifth Third then removed the action to this Court on March 4, 2019.  [Record No. 1]

Chesser submitted her initial disclosures on April 24, 2019, prior to the entry of the April 25, 2019 Scheduling Order.  [Record Nos. 8 and 10]  The Scheduling Order provides that disclosure "[s]upplementation under Rule 26(e) shall be due within thirty days of the discovery of new information, but by no later than thirty days prior to the close of discovery." [Record No. 10 ¶ 3]  The plaintiff completed interrogatories on November 12, 2019.  [Record

- 3 -

No. 36-2]  She was deposed on November 22, 2019.  [Record No. 37-3]  The discovery period

closed on November 25, 2019.  [Record No. 10, ¶ 4]

Fifth Third moved for summary judgment on the day of the Scheduling Order's

dispositive motions deadline (December 23, 2019), arguing that it was entitled to judgment as

a matter of law on two relatively narrow grounds.  [Record Nos. 10, ¶ 10 and 21]  First, it

argued that Chesser's breach of contract claim failed as a matter of law because the plaintiff

was required to comply with the Guide's requirements but failed to do so.  [Record No. 21-1,

pp. 6-9]  Second, Fifth Third contended that the KCPA claim failed as a matter of law because

this dispute concerns real estate rather than consumer goods or services.  The Court entered

judgment in favor of the defendant on the KCPA claim in a January 21, 2020 memorandum

opinion and order and denied the summary judgment motion on the breach of contract claim

during a February 7, 2020 hearing.  [Record Nos. 25 and 28]

Fifth Third then disbursed the balance of the KFB insurance proceeds (approximately

$66,648.68) approximately six weeks following the hearing on its summary judgment motion.

[*See* Record Nos. 36, p. 10 and 39, p. 3.] It then filed the four pending motions *in limine* on

April 7, 2020.  [Record Nos. 34-37]

## II.  Evidence and Arguments That Fifth Third Seeks to Exclude or Prohibit

### A.  Evidence of Damages

#### i.  Damages-Related Arguments Inappropriate for Motions *In Limine*

As a preliminary matter, the Court will address the impropriety of several aspects of

the damages-related motions at this stage in the litigation.  The United States Court of Appeals

for the Sixth Circuit has explained that "[a] motion *in limine* is 'any motion, whether made

before or during trial, to exclude anticipated prejudicial evidence before the evidence is

actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984)).  However, simply calling a filing a "motion *in limine*" and/or citing to rules of evidence is insufficient to establish that a motion actually addresses the admissibility of evidence, particularly where a motion's argument "rests entirely on the presumption that [the plaintiff] would not be able to make out a *prima facie* case" for a claim.  *Id.* at 562-63.  In other words, a *motion in limine* "is not a means to dispose of an entire claim or element of damages."  *Wheeler v. Motorist Mut. Ins. Co.*, No. 5: 13-319-DCR, 2015 WL 893535, at *1 (E.D. Ky. March 2, 2015).  "[A] mechanism already exists to resolve [such] non-evidentiary matters prior to trial – the summary-judgment motion."  *Louzon*, 718 F.3d at 561.  For this reason, "[w]here a motion *in limine* is nothing other than a 'rephrased summary judgment motion, the motion should not be considered.'"  *Wheeler*, 2015 WL 893535, at *1 (quoting *Louzon*, 718 F.3d at 563).

With this in mind, the Court declines to consider the following arguments of the damages-related motions because they are, in effect, summary judgment arguments cloaked as support for motions *in limine*: (1) evidence of compensatory damages should be excluded because Chesser has failed to prove them with reasonable certainty [Record No. 36, pp. 12-13]; (2) evidence of punitive damages should be excluded because punitive damages are not recoverable as a matter of law for Chesser's remaining breach of contract claim [Record No. 37, pp. 10-14]; and (3) evidence of punitive damages should be excluded because Chesser has failed to produce or adduce any evidence of punitive damages  [*Id.* at pp. 14-15].

These are issues of law and fact that pertain to Chesser's ability to establish a *prima facie* breach of contract claim.  *See*, *e.g.*, *Metro Louisville/Jefferson County Government v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) ("To prove a breach of contract, the complainant

must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract.") (citation omitted).  They may be appropriate support for a motion for summary judgment, but the dispositive motion deadline expired more than three months before Fifth Third filed the pending motions on April 7, 2020.  [Record No. 10]  Further, Fifth Third could have reasonably raised these three arguments at the summary judgment stage.[1]  Thus, the Court declines to entertain them at this point in the litigation, and the damages-related motions will be denied insofar as they seek exclusion of evidence on these grounds.[2]

### ii. Damages-Related Arguments Appropriate for Motions *In Limine*

The Court, however, will address the portions of Fifth Third's damages-related motions that do not advance summary judgment arguments.  These include Fifth Third's arguments that evidence of compensatory and punitive damages should be excluded because Chesser

---

[1]     Much of Fifth Third's compensatory damages arguments directly or indirectly relate to the fact that the bank has now paid the balance of the insurance proceeds to Chesser.  [*See* Record No. 36.]  As noted above, the defendant made the final payment in late March 2020, three months *after* the dispositive motions deadline.  Still, as discussed below, Chesser indicated that she would seek many of the other various compensatory damages in her Complaint, interrogatories, and deposition prior to the dispositive motions deadline.  [*See* Record Nos. 36-2 and 36-3.]  Therefore, the bank could have reasonably argued that she lacked the evidence to prove such damages with reasonable certainty in a summary judgment motion.

[2]     The Court makes one additional observation regarding the propriety of Fifth Third's motions relating to damages.  Fifth Third's motions *in limine* request that the Court bar the plaintiff from establishing this element of a breach of contract claim by variably arguing that the Court should not permit Chesser to introduce *any* evidence of damages.  [Record Nos. 34, pp. 8-9, 36, and 37]  The motions collectively seek an order indicating, albeit indirectly, that the plaintiff's breach of contract claim fails as a matter of law even though the summary judgment stage has passed.  This is the type of litigation strategy that the Sixth Circuit deemed suspect in *Louzon*.  718 F.3d at 561.  And while an analysis of certain damages-related arguments is appropriate at this time, the Court is very mindful of the potential collective effect of the relief sought by the motions *in limine*.

failed to disclose such evidence and documents supporting her calculations as required by the Federal Rules of Civil Procedure.  [Record Nos. 36, pp. 8-12 and 37, pp. 14-15]

> Under Rule 26(a),
>
> a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rule 26(e) also imparts a duty to supplement or correct disclosures "in a timely manner if the [disclosing] party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process."  Fed. R. Civ. P. 26(e)(1)(A).

And as noted, the Scheduling Order in this case states that "[s]upplementation under Rule 26(e) shall be due within thirty days of the discovery of new information, but by no later than thirty days prior to the close of discovery."  [Record No. 10, ¶ 3]  The discovery period ended on November 25, 2019.  [*Id.* at ¶ 4]

> Rule 37(c) outlines sanctions for failures to comply with Rule 26(a) or (e):
>
> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  The test for exclusion of evidence under Rule 37(c)(1) is "very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless."  *Bessemer & Lake Erie R.R. Co. v. Seaway*

*Marine Transport*, 596 F.3d 357, 370 (6th Cir. 2010) (quoting *Vance ex rel Hammons v. United States*, 182 F.3d 920 (6th Cir. 1999)) (quotation marks omitted).

The Sixth Circuit has adopted a five-factor test to be used in determining whether late or omitted disclosures are substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (*quoting Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)).   Additionally, courts have considered the failure to disclose "amorphous" damages calculations, such as punitive and emotional distress damages, to be substantially justified or harmless due to the difficulty of accurately calculating them prior to trial.  *E.g.*, *Conn v. Deskins*, No. 16-87-ART, 2017 WL 1738084, at *3 (E.D. Ky. March 7, 2017) (citations omitted); *Scheel v. Harris*, No. 3:11-17-DCR, 2012 WL 3879279, at *7 (E.D. Ky. Sept. 6, 2012).

Fifth Third contends that a variety of damages should be excluded under Rules 26 and 37.  It argues that Chesser failed to provide computation and documentation of the following compensatory damages:

> (1) an unspecified amount for "whatever it costs to fix [Chesser's] floor in front of those French doors"; (2) an unspecified amount for furniture destroyed in a fire at a self-storage facility; (3) $20,000 in alleged interest on unspecified expenses incurred by Ms. Chesser; and (4) an unspecified amount of depreciation damages.

[Record Nos. 36, p. 10 (citing Record Nos. 36-2, p. 10 (Interrogatory) and 36-3, p. 28 (Chesser's Deposition)).]  Additionally, Fifth Third contends that Chesser failed to document or disclose evidence regarding punitive damages.

Chesser has argued for various damages throughout the case.  Her Complaint alleges that she was unable to pay for work that had been completed on her property while Fifth Third withheld the funds, stated that she had been forced to borrow money to pay for some renovations, indicated that she suffered damage to her credit score, and requested punitive damages in the prayer for relief.  [Record No. 1-1, pp. 3-4]  In the November 12, 2019 interrogatory responses, Chesser claimed the following damages:

> 1) Check from Farm Bureau for $82,732.89 – remainder of check; 2) repair cost of all damages that the home has sustained as a result of 5/3's negligence to dispense the funds; . . . 4) Furniture destruction to furniture kept in storage and not moved [because] of monies for repairs to floors were not released and due to no money to purchase from vendors; 5) interest on money held by Fifth Third; 6) All [depreciation] that was not retrieved due to 5/3 holding all monies; 7) all other damages that have and may occur due to unreleased funds by 5/3 Bank; 8) Interest on my saved cash that was used for home items that 5/3 had the money and receipts for totaling $20,000; 9) Punitive damages to be fixed by the Court.

[Record No. 36-2, p. 10]  Chesser further testified at her November 22, 2019 deposition that: (1) documents tendered to Fifth Third included information about the depreciation money withheld by KFB pending the property's repairs; (2) she had sustained damages to the floor of her house unrelated to the initial vandalism because she did not have money to fix doors and storms destroyed previously-repaired floors; (3) a storage facility holding the house's furniture while the property was being repaired burned down in July 2019; and (4) she believed Fifth Third owed interest on the retained KFB funds.  [Record No. 36-3, pp. 24-27]

During the February summary judgment hearing, Chesser indicated that she maintained claims for punitive damages, compensation and interest for a $15,000.00 loan taken out to accommodate for the withheld funds, damage to the furniture that burned at the storage facility, and the $3,000.00 depreciation withheld by KFB pending repairs to the property.  [Record No. 30, pp. 34-35]  Chesser's response to Fifth Third's motions reiterates claims for loss of

furniture, punitive damages, loss of depreciation, inability to make certain repairs due to the withholding of KFB proceeds, inability to pay creditors, and decreased credit score.  [Record No. 39, pp. 3-6]

An exclusion determination is relatively simple for certain damages allegations that were clearly ascertainable within the discovery period.  For example, evidence concerning the destruction of furniture will be excluded.  This claim no doubt came as a surprise to Fifth Third, which could not have anticipated that the storage facility where the furniture was held would have burned down even if it could or should have anticipated other claimed damages resulting from its decision to withhold the KFB insurance proceeds.  There is evidence to suggest that this event occurred in July 2019, roughly three months prior to the Scheduling Order's deadline for supplementation of discovery disclosures.  Chesser has offered no reason excusing her failure to calculate and document the damages resulting from the fire at the storage facility.  And importantly, the furniture's value would have been definite and not amorphous, making it relatively easy for Chesser to document the destruction and calculate an approximate value of the claimed damages prior to her deadline to do so.  Accordingly, evidence of this claim for damages will be excluded from trial under Rule 37(c)(1).

Additionally, Chesser's deposition testimony indicates that either the plaintiff or KFB previously disclosed the KFB depreciation information to Fifth Third.  Fifth Third has not offered any documentation to rebut this testimony, and the Court accordingly finds that that any failure to redisclose this information during the discovery period was substantially justified or harmless.  Therefore, evidence concerning the depreciation will not be excluded.

Other damage claims are more amorphous or were not obviously ascertainable within the period set for the relevant disclosures.  These claims include: damage to Chesser's credit

score, accumulating harm to the property itself resulting from an inability to afford its repairs (*e.g.*, the repeated damage to floors that was caused by an inability to fix the house's doors), damages relating to debts owed to loan creditors on loans incurred due to the withholding of funds, damages relating to credit card payments, interest on the withheld KFB funds, and interest on money expended by Chesser. These alleged damages ostensibly accumulated throughout the discovery period and after the close of discovery because they stem from the fact that Chesser did not have the majority of the KFB insurance money. Their dollar figure values undoubtedly changed until the balance of KFB insurance proceeds was paid to Chesser on March 25, 2020, *four months* after the close of discovery and *five months* after the Scheduling Order's deadline for disclosures. And although it is not entirely clear, some of these claimed damages may have grown after the $66,648.68 was disbursed to Chesser in March 2020. The evolving nature of the damages resulting from the alleged wrongful withholding of the KFB insurance proceeds strongly weighs against exclusion under Rule 37(c)(1). And the amorphous nature of punitive damages also weighs against exclusion on this ground.

Further, the Court finds that the *Howe* factors counsel against excluding evidence of such damages. That Chesser sustained these damages throughout and beyond discovery should come as no surprise to Fifth Third, which no one disputes withheld the bulk of the insurance proceeds until March 2020 and was on notice of accumulating damages claims during the discovery period. Unlike the fire-related damages, the remainder of these claims are the predictable results of Fifth Third's decision (whether right or wrong) to withhold the KFB money. Fifth Third had the ability to cure any surprise by paying the proceeds earlier than March 2020 – Chesser first attempted to obtain the funds in October 2018. Evidence of these

damages would not disrupt the trial, and the evidence would be important for the jury to be able to allocate damages if it should find liability.  The first four *Howe* factors all support a finding that the failure to disclose documentation and calculations of these damages was substantially justified or harmless, even though Chesser has not explicitly articulated a reason for why she did not disclose this information.

In summary, the Court will not sanction Chesser by excluding any evidence of damages except those regarding the furniture destroyed in the storage unit fire.  However, Chesser will be required to disclose documentation and calculations of all compensatory damages to the defendant and the Court on or before August 28, 2020, to the extent such disclosures are not already required by Paragraphs 11 and 12 of the Court's April 8, 2020 Order.  [Record No. 38]

## B.  Evidence or Testimony Not Previously Disclosed

Fifth Third also generally moves to exclude all evidence that has not previously been disclosed as required by Rule 26.  [Record No. 34, pp. 8-9]  Apart from its damages-related Rule 26 and Rule 37 arguments, the defendant provides no specific indication as to which evidence this request refers.  Thus, to the extent the previous section of this memorandum opinion and order does not address the bank's request, the Court will reserve ruling on this argument until such evidence is proffered at trial.

## C.  Evidence of Attorney's Fees

Fifth Third also moves to exclude evidence of attorney's fees.  [Record No. 36, pp. 13-14]  Unlike several of the damages-related arguments, this request does not pertain to the plaintiff's ability to establish an element of her *prima facie* breach of contract claim.

The Supreme Court of Kentucky has indicated that an award of attorney's fees is inappropriate absent "a specific contractual provision allowing for recovery of [] fees or a fee-

shifting statute . . . ." *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 842 (Ky. 2005) (citing *Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136 (Ky. 1991)).  As Fifth Third points out, the KCPA claim in this case has already been dismissed, and it does not appear that any provision of the underlying mortgage agreement provides for the recovery of attorney's fees.  [Record Nos. 21-2 and 36, pp. 13-14] As a result, the Court will exclude evidence of attorney's fees.

### D.  Evidence of Fifth Third's Financial Condition

One of Fifth Third's motions *in limine* entirely concerns the exclusion of evidence relating to the bank's financial condition.  [Record No. 35]  The bank contends that federal and Kentucky law prohibit the admission of such evidence, its probative value is substantially outweighed by the danger of undue prejudice under Federal Rule of Evidence 403, and federal law forbids its introduction to prove bad faith or the propriety of punitive damages.  [*Id.*]

The Court agrees with the last two arguments.[3]  The third essentially contends that the evidence is irrelevant.  Under Federal Rule of Evidence 401, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fifth Third's financial condition as a large bank is not of consequence in determining the action and does not have a tendency to make any fact more or less probable.  And the second argument addresses Federal Rule of Evidence 403, which states that the Court "may exclude relevant evidence if its probative value

---

[3]     Fifth Third cites, *inter alia*, a number of Kentucky state court cases in support of its first argument as well as federal court decisions discussing the evidentiary rule announced by these state court cases.  [Record No. 35, pp. 2-3]  It is not clear why the Kentucky evidentiary rule would be material to the present matter, but to the extent the first argument is based solely on federal law, the Court agrees that such evidence should be excluded.

is substantially outweighed by a danger of . . . unfair prejudice." Insofar as evidence of Fifth Third's financial condition is actually relevant to any issue in this case, the Court agrees that its probative value is substantially outweighed by a risk of unfair prejudice because it could be used as an emotional appeal to the jury to find against a defendant who can afford to pay large damages to an individual plaintiff. Therefore, the motion *in limine* that relates to exclusion of financial condition evidence will be granted, and such evidence will be excluded from trial.

### E. Evidence of the Timing of Payments

Fifth Third also contends that evidence concerning the timing of its February 25, 2019, and March 25, 2020 KFB proceeds disbursements to Chesser should be excluded under Rules 401 and 403. [Record Nos. 34, pp. 3-4 and 41, pp. 12-13] It argues that the timing of the payments is irrelevant because it pertains to post-suit conduct of the defendant and is not "probative of the sole remaining issue in this case: whether Fifth Third breached the mortgage agreement pre-suit by requiring Ms. Chesser to provide documentation prior to disbursing the KFB funds." [Record No. 34, p. 4] Further, the bank asserts that such evidence would be unduly prejudicial because a jury could infer that the bank paid the plaintiff to correct wrongdoing or that Fifth Third made the payments because Chesser filed the lawsuit. [*Id.*] Chesser argues that the timing of the payments is relevant. [Record No. 39, pp. 6-7]

The Court rejects Fifth Third's relevancy argument for two related reasons. First, as Fifth Third recognizes, post-suit conduct regarding payments by the bank to Chesser is not inherently irrelevant. The defendant explicitly states that it has no objection to the introduction of evidence demonstrating that Fifth Third made payments to Chesser and only objects to evidence of the *dates* the payments were issued. [Record No. 41, p. 13] This is sensible, as exclusion of the fact that these payments were made could result in the jury's consideration of

damages accounting for withheld funds that are no longer withheld.  But the fact that the funds were disbursed, like the timing of the disbursement payments, involves the defendant's post-suit conduct because none were disbursed until after the lawsuit was filed in Boyle Circuit Court.  Therefore, it is clear to all parties that some post-suit conduct is relevant in this case.

Second, the timing of payments is very relevant, at a minimum, to the question of damages.  Chesser has consistently maintained that the damages incurred by the alleged breach increased as the bank withheld the funds over the course of more than a year.  [*E.g.*, Record No. 39, p. 3.]  As Fifth Third cannot exclude evidence of damages as a matter of law with its motions *in limine*, the timing of the payments is critical information for the jury to assess this element of the plaintiff's breach of contract claim.  Thus, the Court declines to exclude timing of payments evidence under Rule 401.

Further, the Court will not exclude the timing evidence under Rule 403.  Fifth Third offers concerns regarding the inferences a jury could draw from evidence of the timing of payments.  However, the potential for such inferences does not substantially outweigh the probative value of the evidence because the evidence would be vital to any meaningful calculation of damages should the jury find that a breach of contract occurred.  Thus, the evidence of the payments' timing will not be excluded on any grounds offered by Fifth Third.

### F.  Evidence Regarding the January 22, 2020 Letter

Fifth Third next requests that the Court exclude evidence of a January 22, 2020 letter from the bank to Chesser that indicated that the defendant had not yet received the insurance claim check from KFB.  [Record Nos. 34, pp. 1-3 and 41, pp. 10-12]  Fifth Third asserts that it simply committed a clerical error when it sent the letter and argues that its admission would be both irrelevant and unduly prejudicial.  The plaintiff claims that the letter, and others like

it, demonstrate the allegedly fraudulent misrepresentations of the bank in this case. [Record No. 39, p. 6]

The Court has yet to consider the propriety of punitive damages because the arguments addressing that issue are inappropriate for the pending motions *in limine*. And it appears, based on the parties' arguments, that the letter is primarily relevant to the issue of punitive damages. However, this is not entirely clear because neither party has submitted a copy of the letter despite the emphases they place on its admissibility. For these reasons, the Court will reserve ruling on the admissibility of the January 2020 letter until trial when these issues can be explored in greater detail.

### G. Evidence of Offers of Compromise

Fifth Third requests exclusion of evidence concerning offers of compromise or settlement under Federal Rule of Evidence 408. [Record No. 34, pp. 7-8] Chesser has indicated that she will adhere to the Court's guidance on this point. [Record No. 39, p. 7]

Rule 408 states:

(a) Prohibited Uses. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
    (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
    (2) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. Subject to the qualifications listed in subsection (b) of the rule, the Court will exclude evidence of offers of compromise or settlement under Rule 408.

- 16 -

### H.  Evidence of or Reference to the Size and Location of Fifth Third's Counsel

Fifth Third moves to exclude evidence of the size and location of its counsel (or perhaps more specifically, the law firm of Dinsmore & Shohl LLP) under Rules 401 and 403 and preclude any reference to such facts.  [Record No. 34, pp. 9-10]  The Court agrees that the size and location of defense counsel's law firm are irrelevant, and the plaintiff will be prohibited from making arguments about these issues or offering evidence pertaining to them.  This ruling, however, will not prevent plaintiff's counsel from asking relevant questions during voir dire regarding potential jurors' knowledge of, or interaction with, the defendant's attorneys, the law firm(s) representing the defendant, including the law firm(s) various offices.

### I.  Reference to *Bureau of Consumer Financial Protection v. Fifth Third Bank*, No. 20-cv-01683 (N.D. Ill.)

Fifth Third also requests that the Court prohibit any reference to *Bureau of Consumer Financial Protection v. Fifth Third Bank*, No. 20-cv-01683 (N.D. Ill.).  [Record Nos. 34, pp. 4-5 and 41, pp. 13-15]  It contends, *inter alia*, that this lawsuit entails issues such as the unauthorized opening of accounts and performance of services – alleged transgressions that are unrelated to Fifth Third's handling of KFB insurance proceeds and performance of the mortgage contract in this case.  [Record No. 34, pp. 4-5]  The bank asserts that any reference to this pending case should be excluded as irrelevant and unduly prejudicial.  [*Id.*]  However, Chesser asserts that this case is relevant due to its allegations of the bank's fraudulent practices. [Record No. 39, pp. 6-7]

The Court has reviewed the Consumer Financial Protection Bureau case and agrees with the defendant.  The claims in that case involve alleged practices that, even if true, would have no bearing on the propriety of Fifth Third's conduct in this case because that case does

not involve mortgage agreements or related insurance proceeds.  Moreover, that case was filed on March 9, 2020, and is still in its early stages.  *See Bureau of Consumer Financial Protection v. Fifth Third Bank*, No. 20-cv-01683, Record No. 1.  The allegations against Fifth Third have not been proven.  Thus, even if they could, in theory, support arguments of fraudulent behavior in this case, they do not do so because they are merely allegations at this point.  Accordingly, the Court will prohibit any reference to that case at trial.

### J.  "Send a Message" and "Golden Rule" Arguments

Fifth Third requests that the Court prohibit Chesser from making "send a message" and "Golden Rule" arguments to the jury at trial.  [Record No. 34, pp. 6-7]  Chesser has stated that she understands the law on each and will "adhere to the guidance of the Court."  [Record No. 39, p. 7]

The Court agrees with Fifth Third that these arguments should be prohibited.  The Sixth Circuit has indicated that jury verdicts influenced by "send a message" arguments should be set aside.  *See Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998) (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996); *Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980)).  And as the Court has noted before, it is well-settled that "Golden Rule" arguments, *i.e.* appeals to jurors to put themselves "in plaintiffs' shoes," are inappropriate.  *Dempsey v. City of Lawrenceberg*, No. 3: 09-cv-33-DCR, 2010 WL 11643485, at *2 (E.D. Ky. Sept. 30, 2010); *see also Johnson v. Howard*, 24 F. App'x 480, 487 (6th Cir. 2001).  Therefore, the Court will preclude the plaintiff from making such appeals to the jury.

### III.  Sequestration of Witnesses

Lastly, the defendant moves to sequester non-party witnesses during the trial.  [Record No. 34, p. 9]  Federal Rule of Evidence 615 provides:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
>
> > (a) a party who is a natural person;
>
> > (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
>
> > (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
>
> > (d) a person authorized by statute to be present.

Thus, the Court will sequester witnesses during trial subject to the limitations prescribed by Rule 615.

### IV.  Conclusion

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.     Defendant Fifth Third Bank, National Association's omnibus motion *in limine* [Record No. 34] is **GRANTED**, in part, and **DENIED**, in part.  The Court **RESERVES** ruling on: (1) whether certain unspecified undisclosed evidence should be excluded at trial; and (2) whether the January 22, 2020 letter from Fifth Third to Plaintiff Beverly Chesser should be excluded at trial.

2.     Fifth Third's motion *in limine* to exclude evidence of the defendant's financial condition [Record No. 35] is **GRANTED**.

3.      Fifth Third's motion *in limine* to exclude evidence of compensatory damages and attorney's fees [Record No. 36] is **GRANTED**, in part, and **DENIED**, in part.

4.      Fifth Third's motion *in limine* to exclude evidence of punitive damages [Record No. 37] is **DENIED**.

5.      Chesser shall disclose documentation and calculations of any compensatory damages **on or before August 28, 2020**.  Failure to comply with this deadline may result in the exclusion of evidence of such damages at trial.

Dated:  July 14, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky